Mr. Justice Hunt
delivered the opinion of the court:
Caldwell brought his action to recover damages for the breach of a transportation contract, dated March 12, 1866. The first, second, and eleventh articles present the points in dispute, and are in the words following, viz :
Article I. That the said Alexander Caldwell shall receive at any time, in any of the months from April to September, inclusive, during the year one thousand eight hundred and sixty-. six, from the officers or agents of the Quartermaster Department at Forts Leavenworth and Riley, in Kansas; at Fort Kearney, Nebraska Territory; Fort Sedgwick, Colorado Territory ; Fort Laramie, Dakota Territory; and at any points or places at which posts or depots shall be established, during the continuance of this contract, on the west bank of the Missouri River, north of Fort Leavenworth and south of latitude 42° north, all such military stores and supplies as may be offered or turned over to him for transportation, in good order and condition, by the officer or agent of the Quartermaster Department at any or all the above points or places, and transport the same with dispatch, and deliver them, in like good or *93 der and condition, to the officer or agent of the Quartermaster Department on duty or designated to receive them at any of the posts or depots which are now or may be hereafter established in the Territory of Colorado, north of 40° north, and at Denver City, and in the Territories of Nebraska, Dakota, Idaho, and Utah, south of latitude 44° north, including Fort Eeno, and east of longitude 114° west of Greenwich, agreeably to the instructions he may receive from the officer or other authorized agent of the Quartermaster Department charged with the duty of forwarding the stores and supplies at Fort Leavenworth or other place of departure; and for the faithful performance of such service he shall be paid in the manner hereinafter provided for in article XV of this agreement, and at the rates specified and shown in the tabular statement hereto annexed and signed by the parties to this agreement, which statement is considered as part hereof.’
Aet. II. That the said Alexander Caldwell agrees and binds himself, his heirs, executors, and administrators, to transport, under this agreement, from the posts, depots, or stations named in article I, or from and to any other posts, depots, or stations that may be established within the district named in said article, any number of pounds of military stores and supplies, from and between one hundred thousand pounds and ten million pounds in the aggregate.
Art. XI. That the said Alexander Caldwell shall transport all the military stores and supplies for which the Quartermaster Department may require wagon-transportation by contract, on the route specified by this agreement, during the year one thousand eight hundred and sixty-six, provided the weight of such military stores and supplies shall not exceed, in the aggregate, ten million pounds; yet nothing herein shall be so construed as to forbid or prevent the United States from using its own means of transportation for such service'whenever it may be deemed advisable to do so.
The Court of Claims found the following to be the facts in the case, viz:
At the date of the contract the only military posts on the west bank of the Missouri Eiver, within the said district, were Fort Leavenworth, in Kansas, and Omaha, in Nebraska Territory. *
On or before the 30th day of March, 1866, the president of *94 the Union Pacific Railroad advised the Quartermaster-General that the company had sixty miles of their line completed west of Omaha, and that the company expected to complete the first hundred miles by the 10th of June.
In the summer and fall of 1866 the Union Pacific Railroad had extended their line westward to Columbus, Lone Tree, and Kearney’s Station, and it offered to the United States a more-expeditious and cheaper mode of transportation than wagon-transportation.
In the summer of 1866 the United States had collected at Omaha military stores and supplies iutended for the supply of posts w'est of the Missouri River and within the district covered by the contract with the petitioner, and in the year I860-they sent by said railroad quantities of said stores and supplies from Omaha to Columbus, Lone Tree, and Kearney’s Station, the successive termini of the railroad as it was extended westward, as is set forth in the schedule hereto annexed, and marked No. 1.
And in the month of June, 1866, the United States contracted with Herman Kountze for the transportation of said stores and supplies from Columbus, Lone Tree, and Kearney’s Station to Fort McPherson, Fort Laramie, and Fort Kearney, on said route No. 1, and copies of said contract are hereto annexed, and marked B and C.
And thereafter the said Kountze, under the said contracts made with him, and in the year 1866, performed the transportation specified in the schedule annexed, and marked No. 2.
Previous to the delivery of said military stores and supplies to the said railroad, and before the making of the said contracts with Kountze, the petitioner was prepared, and notified the United States of his readiness, to transport the said military stores and supplies under and according to his contract.
Previous to the delivery of said military stores and supplies to said Kountze, but after the making of said contracts with him, the petitioner was prepared, and claimed of the United? States the right, under his contract, to transport the said military stores and supplies from the termini of said railroad to-such places, within his contract, as the United States might designate. *
No notice was given by the United States to the petitioner,. *95 under bis contract, to transport tbe military stores and sup-lilies transported by said Kountze. But on tbe lltk of June, I860, the petitioner was notified by tbe United States tbat transportation under bis contract would not be needed.
Tbe cost of the transportation of said military stores and supplies delivered to said Kountze in any of the months from April to September, inclusive, would have been to tbe petitioner $1.20 per hundred pounds .per hundred miles.
The Court of Claims awarded to the claimant the sum of $35,089.01, as damages for the failure to deliver 2,915,484 pounds of supplies which were transported from Omaha to Columbus, to Lone Tree, and to Kearney’s Station by rail, and thence to Fort McPherson, Fort Laramie, and Fort Reno by wagon. The court limited the recovery tó transportation given between the months of April and September, 1866, and refused to < llow damages for tbe failure'to deliver for transportation the supplies which were carried after that perio’d, and in the year 1866. From the first branch of. the judgment an appeal was taken by the United States, and tbe petitioner has appealed from the latter part of the judgment.
In the view we have taken]of the case, it is unnecessary to consider a question largely discussed in the court below and in the briefs of counsel here, to wit, whether the contract, although not in terms containing a stipulation binding the United States to deliver to the claimant all the stores and supplies it desired to transport between the points mentioned, was to be construed as having tbat effect. Our decision of tbe case rests upon other grounds, which are reached upon the assumption that the claimant is right in his construction of the contract in that respect, butdo not at all depend upon it.
By the second article of the contract of Caldwell, the claimant, he undertakes to transport “ from the posts, depots, or stations named in article I,” or ¿from “ any other posts, depots, or stations that may be established” on the west bank of the Missouri River, any number of pounds of supplies not exceeding ten million pounds in the aggregate. The posts named in article I are Forts Leavenworth and Riley, in Kansas •, Fort Kearney, Nebraska; Fort Sedgwick, Colorado ; Fort Laramie, Dakota. The district named in said article within which other posts may be established is tbe west bank of the Missouri River, north of Leavenworth and south of 42° north latitude.
*96 The posts from which, the supplies were sent, which it is said should have been delivered to the claimant, were not those named in article I, or either of them. They were Omaha, at the outset or starting-point, and Columbus, Lone Tree,, and Kearney’s Station, (not Fort Kearney,) as the intermediate points from which the wagon-transportatioh was taken. These three points were railroad stations on the Union Pacific Kail-road, and they were points to which the road was, from time to time, sufficiently completed for the purposes of railroad travel ■or transportation.
The judgment of the Court of Claims is based upon the theory that the expression in the contract “posts, depots, or stations,” .includes railway depots or stations; that when a depot or station was established upon the Pacific Koad, as its construction advanced westwardly, such point became a post or station within the meaning of the contract. ■ We are of the opinion •that this was not the intention of the parties, but that military posts or stations alone were intended by them.
The contract was intended to aid the Government in the transfer of its stores and supplies from one military post, station, or depot, to another. While the same words in a contract, the subject-matter of which respected goods to be transported for individuals and in time of peace, might be construed as claimed,- such is not their fair and natural meaning in the contract we are considering. The term “post,” in this instrument, means a military establishment, where a body of troops is permanently fixed ; “station” means a place or department where a military duty is to be discharged, or the synonym of “depot,” a place where military stores or supplies are kept or troops assembled. To apply them otherwise would, we think, be giving a forced construction to language used in the presence of actual war, in reference to military stores, and in reference to their transportation from one military position to another, as the necessities of the Army should require.
Columbus, Lone Tree, and Kearney are not “ on the west bank of the Missouri Kiver,” and the contract limits the other posts, stations, or depots that may be established to that locality. The record shows that from Omaha to Columbus is ninety-two miles, to Lone Tree is one hundred and thirty-two miles, and to Kearney’s Station is one hundred and ninety-one miles; and there is no evidence that the Missouri River is at *97 any other point nearer to the place named than is thus indicated. It would be quite a latitudinarian construction that would hold that these places are “ on the Missouri River.” The specifications of the points of departure are minutely described in article I, and cannot be enlarged by the looser'language used in article III, where another subject is provided for, and the points of departure are mentioned in an incidental manner only.
The supplies now under consideration, it'will be observed, were shipped from Omaha, as the first or original point of departure. Omaha is situated on the west bank of the Missouri River, and was a station or depot where military stores and supplies were collected, and where troops were assembled at the time the claimant’s contract was made. It is nevertheless not a point from which the supplies that were to be forwarded were by the contract to be delivered to the claimant. Those points were the places named, to wit, Forts Leavenworth, Riley, Kearney, Sedgwick, and Laramie, the station or depot of Omaha not being named. Nor can it come under the words at such points or places at which posts or depots shall be established during the continuance of this contract on the west bank of the Missouri River,” as it was a post or depot established long before the making of the contract, and was in full operation as a post or station when the contract was made.
The reason for this careful omission of Omaha, both from the expressed points of departure and those afterwards to be formed, is found in the fact that it was- the eastern terminus of the Union Pacific Railroad. The building of this 'road was then going on. It was well known to the United States authorities that it would be rapidly extended westwardly, and that it would be a speedy and cheap means of transporting its supplies. The contract with the claimant required the supplies to be transported at the rate of ten miles a day with mule-trains, and fourteen miles a day with ox-trains, and at the expense of $1.45 per hundred pounds for every hundred miles. The train upon the railroad would carry the supplies the same distance in an hour, and the expense would be diminished nearly as much as the speed would be increased. All this was well known to both parties. Hence, when the road was completed to Columbus it was used by the Government for that distance, and when successively completed to Lone Tree and Kearney, it was used *98 to those places. That the United States, under such circumstances, intended to deprive itself of the power to nse this new and more useful mode of transportation can scarcely be credited. It has not done so in terms, and we think that there is no fair reason to suppose that it has done so by implication.
The whole matter results in this : The G-overnment is responsible in damages if it has sent its supplies through other parties than the claimant from the posts of Leavenworth, Riley, Kearney, Sedgwick, or Laramie, or from other stations or posts thereafter established on the west bank of the Missouri River. The points from which it is proved to have sent supplies by other means than through the claimant are not among those named, nor are they military posts, nor are they on the west bank of the Missouri Eiver. Omaha is not among the posts named, nor is it one established after the making of the contract. Hence there has been no breach of the contract, and there is no liability in damages. ‘
The judgment awarding damages in the sum of $35,689.01 is reversed, and the case is remitted to the Court of Claims, with directions to dismiss the petition.